# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

RANCE L. COX                                                                              PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:18-CV-P147-JHM

DANNY ALLEN *et al*.                                             DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by Defendants for summary judgment (DN 20). Fully briefed, this matter is ripe for adjudication. For the following reasons, Defendants' motion for summary judgment will be denied.

## I.

*Pro se* Plaintiff Rance L. Cox initiated this 42 U.S.C. § 1983 prisoner civil rights action by filing a complaint, and then an amended complaint, both signed under penalty of perjury (DNs 1 & 9). In these pleadings, Plaintiff states that, when he was a pretrial detainee incarcerated at the Hardin County Detention Center (HCDC), he was attacked by another inmate. In the complaint, he specifically writes as follows:

> On February 26, 2018, I [] was assaulted in my protective custody cell by [] a state inmate over a roll of toilet tissue! . . . I was beaten in head, hit in the face, slammed to the ground and kicked! It took medical 4 dazes to see me and only gave me Ibeprofen for the pain in my middle + lower back that I still am suffering from! [Defendant] Reynolds had photos taken of my torn shirt, back, right side of face and [the other inmate's] fingernail he lost while beaten me.

In his amended complaint, Plaintiff continues:

> I am housed in a seg. unit along with medical inmates and seg. inmates! The medical inmate has a state inmate watching him, he is the one who attacked me after my shower! [Defendants] are at fault for not housing the medical inmate . . . where he belonged. If he had been there the state inmate would never had have been able to try and steal my toilet paper and then assault me when I said no to him! Me being in P/C in seg. and getting beaten up [is the fault of] Defendants Allen and Reynolds.

Based upon these allegations, the Court allowed Fourteenth Amendment failure-to-protect claims to proceed against HCDC Jailer Danny Allen and "Lt. Reynolds" in both their official and individual capacities.

## II.

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). Statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The evidence of the non-moving party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed

before the Court must be drawn in favor of the opposing party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**III.**

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

**A. Official-Capacity Claims**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691 n.55 (1978)). Thus, Plaintiff's official-capacity claims against Defendants are actually against their employer, which is Hardin County. *See, e.g.*, *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

In order to establish municipal liability under 42 U.S.C. § 1983, a plaintiff must show that the alleged constitutional violation occurred because of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. at 694. A plaintiff can make this showing "by demonstrating one of the following: (1) the existence of an illegal official policy or legislative

enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

In their motion for summary judgment, Defendants state that "it is absolutely clear that there is no evidence of record that Hardin County had adopted a specific policy, procedure, or custom of failing to protect its inmates."[1] Defendants, however, present no evidence in support of this statement. They also fail to directly address Plaintiff's actual claim – that he was assaulted and injured by another inmate, even though he was in protective custody, because HCDC has a custom or policy of failing to separately house inmates with different security classifications.

Thus, the Court finds that Defendants have failed to meet their burden and will, therefore, deny summary judgment as to Plaintiff's official-capacity claims.

## B. Individual-Capacity Claims

As noted above, the Court also allowed failure-to-protect claims, or claims of deliberate indifference to Plaintiff's safety, to proceed against Defendants Allen and Reynolds in their individual capacities. While the Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment, it is the Due Process Clause of the Fourteenth Amendment that provides the same protections to pretrial detainees. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (citing *Richko v. Wayne Cty.*, 819 F. 3d 907, 915 (6th Cir. 2016)). "The Sixth

---

[1] Defendants also argue that the official-capacity claims against them fail because "there is not evidence, and not even an allegation, to support that proposition that anyone's training program was inadequate to the tasks an officer must perform." The Court, however, need not address this argument because, as Defendants note, Plaintiff did not make such an allegation. Moreover, the Court did not allow the official-capacity claims to proceed based upon a failure-to-train theory of liability.

4

Circuit has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Id.* (quoting *Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). At this time, the only explicit exception in the Sixth Circuit to the general rule that rights under the Eighth Amendment are co-extensive with rights under the Fourteenth Amendment pertains to excessive-force claims brought by pretrial detainees. *Id.* at 938 n.3 (recognizing that *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), abrogated the subjective intent requirement for Fourteenth Amendment excessive-force claims and that the standard which governs pretrial detainee claims may be shifting, but declining to apply the *Kingsley* standard to a pretrial detainee claim of deliberate indifference to a serious medical need). Therefore, the Court will analyze Plaintiff's claims under the Eighth Amendment standard.

The Eighth Amendment imposes a duty on corrections officers to take reasonable measures "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). To maintain an Eighth Amendment claim based on a failure to prevent harm, an inmate must prove both an objective and subjective component. *Id.* With regard to the objective component, the plaintiff "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective component requires the plaintiff to prove that the defendant acted with "deliberate indifference" to that risk. *Id.* Under this subjective prong, a plaintiff must show that "the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014) (quoting *Comstock*, 273 F.3d at 703).

Although Defendants reference this standard in their motion, they do not present any evidence with regard to either the objective or subjective component. As to the subjective component, they argue that they were "not aware of any facts that [the other inmate] would harm anyone, including [Plaintiff], and they could not have drawn any such inference." However, they fail to provide any evidence in support of this argument. Thus, because Defendants have failed to present any evidence, such as affidavits, related to either component of this standard, they have not met their burden under Rule 56.

The Court next turns to Defendants argument that they are entitled to summary judgment because the evidence shows that Plaintiff was not injured when he was allegedly attacked by the other inmate. Defendants cite to *Wilson v. Yaklich*, in which the Sixth Circuit dismissed a failure-to-protect claim because the complaint contained no allegations that the inmates who threatened the plaintiff "actually injured him physically." 148 F.3d. 596, 600-01 (6th Cir. 1998). In support of this argument, Defendants point to video surveillance footage from HCDC which ostensibly shows the hallway outside of Plaintiff's cell before, during, and after the alleged attack (DN 16). According to Defendants, the "Tape clearly shows that [Plaintiff] was not assaulted as alleged. [Plaintiff] is clearly seen at the end of the tape standing in the doorway uninjured, and perhaps even casually speaking to [the other inmate]. Regardless, the video depicts an uninjured [Plaintiff]." Plaintiff, however, does not agree with this interpretation of the footage. Rather, he argues that the "photos"[2] show the other inmate inside the cell block where Plaintiff was being held in protective custody and then show this inmate enter Plaintiff's cell, where Plaintiff claims he was assaulted. Upon review of the video, the Court agrees with

---

[2] It seems that Defendants did not send Plaintiff the actual video, but rather still photographs from that video. If the Court were ruling against Plaintiff, the Court would be concerned that Plaintiff was unable to view the video itself. However, because the Court is denying Defendants' motion, the Court need not address this issue.

6

Plaintiff that this video actually seems to support his version of the alleged attack and that it does not conclusively prove that he was not injured as a result of the alleged attack.

The other evidence that Defendants rely upon to show that Plaintiff was not injured are three sick call slips that Plaintiff submitted following the alleged attack on February 26, 2018. The first sick call slip states, "My Back was injured yesterday when I was thrown to the floor by a state inmate! Lower Back!!!" (DN 20-5, Inmate Sick Call Slip, 2/27/18). The portion of the slip that was ostensibly completed by medical staff is illegible (*Id.*). The second sick call slip states, "Lower Back hurts Bad from the assault on me from state inmate!" (DN 20-6, Inmate Sick Call Slip, 3/5/18). The portion of the slip to completed by medical staff is blank (*Id.*). On the third sick call slip Plaintiff has written, "[Illegible] . . . I need to see Doctor and have x-rays done" (DN 20-7, Inmate Sick Call Slip, 3/19/18). Plaintiff also indicates that that he has had "this problem . . . since I was assaulted by state inmate" (*Id.*) The portion of the slip that indicates it is to be completed by medical staff is also blank (*Id.*). The Court is unsure how Defendants believe these medical sick call slips support their argument that Plaintiff was not injured during the alleged assault. Rather, these slips actually appear to support Plaintiff's argument that he was injured and that he repeatedly sought medical treatment for his injury.

In sum, Defendants have not submitted any evidence which shows that they were not deliberately indifferent to Plaintiff's safety, and the evidence they submitted regarding whether Plaintiff was injured in the alleged attack is ambiguous at best. Thus, because Defendants have failed to meet their burden by showing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law, the Court will deny summary judgment on the individual-capacity claims as well.

## IV.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (DN 20) is **DENIED**.

Date: April 18, 2019

Joseph H. McKinley Jr., District Judge
United States District Court

cc: Plaintiff, *pro se*
 Counsel of Record
4414.011