UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 3:18-CV-00147-GNS-CHL

RANCE L. COX                                                                                          PLAINTIFF

v.

DANNY ALLEN, et al.                                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment (DN 35), Defendants' Motion to Alter or Amend (DN 37), and Defendants' Motion to Dismiss (DN 96). For the reasons discussed below, Defendants' Motion to Alter or Amend is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendants' Motion to Dismiss is **DENIED AS MOOT**.

**I.     STATEMENT OF FACTS**

Plaintiff Rance L. Cox ("Plaintiff") initiated this *pro se* 42 U.S.C. § 1983 prisoner civil rights lawsuit against former Jailer of Hardin County, Danny Allen ("Allen"); former Deputy Jailer, Lt. Robert Reynolds ("Reynolds"); and the Hardin County Detention Center ("HCDC"). (Compl., DN 1). Upon review of Plaintiff's Amended Complaint, the Court allowed Plaintiff to proceed on his Fourteenth Amendment failure-to-protect claims against HCDC, and against Allen and Reynolds in their official and individual capacities. (Scheduling Order 1, DN 10).

Plaintiff's Verified Complaint stated:

On February 26, 2018, I . . . was assaulted in my protective custody cell by Marquise Bates a state inmate over a roll of toilet tissue! . . . I was beaten in head, hit in the face, slammed to the ground and kicked! It took medical 4 dazes [sic] to see me and only gave me Ibeprofen [sic] for the pain in my middle + lower back that I still am suffering from! [Defendant] Reynolds had photos taken of my torn

> shirt, back, right side of face and [Marquise Bate's] fingernail he lost while beaten me.

(Compl. 4). Plaintiff's Verified Amended Complaint further alleged:

> I am housed in a seg. unit along with medical inmates and seg. inmates! The medical inmate has a state inmate watching him, he is the one who attacked me after my shower! [Defendants] are at fault for not housing the medical inmate . . . where he belonged. If he had been there the state inmate would never had have been able to try and steal my toilet paper and then assault me when I said no to him! Me being in [protective custody] in seg. and getting beaten up [is the fault of] Defendants Allen and Reynolds.

(Am. Compl. 4).

Plaintiff moved for summary judgment on August 16, 2018, which the Court denied. (Pl.'s Mot. Summ. J. DN 18; Mem. & Order, DN 26). Defendants moved for summary judgment on November 7, 2018, which was the deadline for dispositive motions. (Defs.' Mot. Summ. J., DN 20; Scheduling Order 3). Plaintiff then moved for summary judgment (DN 23), which the Court interpreted as a response to Defendants' motion and denied Defendants' motion. (Mem. & Order, DN 27; Mem. & Order 1, DN 32). Plaintiff then filed the instant motion for summary judgment, and Defendants moved to alter the Court's prior Memorandum and Order denying its previous summary judgment motion. (Pl.'s Mot. Summ. J., DN 35; Defs.' Mem. Supp. Mot. Alter J., DN 37-1 [hereinafter Defs.' Mot. Alter J.]).

Throughout the following year, the Court extended discovery deadlines, directed Defendants to reproduce evidence, and attempted to hold status conferences. (*See, e.g.*, Mem. & Order, DN 40; Mem. & Order, DN 59; Order, DN 81; Order, DN 89). The Court did not extend the deadline for dispositive motions, however. Throughout the process, Plaintiff was able to appear occasionally but was often unavailable or impossible to contact. Eventually on November 23, 2020, a status conference was held to discuss Plaintiff's failure to file a response to Defendants' pending motion to alter or amend. (Report Telephonic Status Conference, DN 94). Due to

2

Plaintiff's lack of attendance at the conference, Defendants moved to dismiss for failure to prosecute. (Defs.' Mot. Dismiss, DN 96). This Court entered a show cause order on January 19, 2021, directing Plaintiff to show cause for his failure to respond. (Order, DN 97). On February 3, 2021, Plaintiff mailed a letter to the Clerk of Court stating that he has been homeless and hospitalized in the interim and requesting the Court "Stand the motion in question[.] The Judge Ruled the Right Way!" (Letter 1-3, DN 98).

## II.     DISCUSSION

### A.     Motion to Alter or Amend

Defendants moved pursuant to Fed. R. Civ. P. 59(e) to alter or amend the Court's Memorandum Opinion and Order denying their Motion for Summary Judgment. (Defs.' Mot. Alter J. 1). Defendants do not explain the reason for their motion beyond acknowledging their failure to present sufficient evidence in support of their earlier motion and supplementing their current motion with new evidence. (Defs.' Mot. Alter J. 1-2, 8). As an initial matter, the procedural basis for consideration of this motion is not Fed. R. Civ. P. 59(e), but Fed. R. Civ. P. 54(b), which allows courts to reconsider interlocutory orders, like a denial of summary judgment. *Cameron v. Ohio*, 344 F. App'x 115, 115, 117-18 (6th Cir. 2009) (explaining that because the denial of a motion for summary judgment is not a final order, courts considering renewed motions for summary judgment are not subject to the "strictures" of Federal Rule of Civil Procedure 59(e), governing motions to alter judgments). Furthermore, "district courts possess the authority and discretion to reconsider and modify interlocutory judgments any time before final judgment." *Phat's Bar & Grill, Inc. v. Louisville-Jefferson Cty. Metro Gov't*, No. 3:10-CV-00491-H, 2013 WL 124063, at *2 (W.D. Ky. Jan. 9, 2013) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)). Under Fed. R. Civ. P. 54(b), a court may revise any

order before it issues an entry of judgment adjudicating all the claims and parties' rights and liabilities, like the Order here. *Rodriguez*, 188 F. App'x at 959.

The Court must then determine whether "justice so requires" consideration of Defendants' motion. *Rodriguez*, 188 F. App'x at 959. The relevant factors for this determination include whether "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Phat's Bar & Grill, Inc.*, 2013 WL 124063, at *3 (quoting *Rodriguez*, 89 F. App'x at 959). Although the standard under Rule 54(b) is similar to that under Rule 59(e), the Sixth Circuit has suggested that district courts have greater flexibility to modify interlocutory orders under Rule 54(b) as opposed to final judgments under Rules 59 and 60. *See Rodriguez*, 89 F. App'x at 959 n.7; *Guy v. Lexington-Fayette Urban Cty. Gov't*, 624 F. App'x 922, 930 n.7 (6th Cir. 2015). Defendants' motion presents "new evidence available" in the form of three affidavits and numerous administrative jail records. Although the evidence was likely attainable before their original motion, the protracted nature of this litigation and both parties' desire for a resolution are compelling reasons to move forward on substance rather than procedure. Accordingly, the Court will exercise its inherent authority to reconsider its prior order denying Defendants' summary judgment and will correspondingly consider Plaintiff's motion for summary judgment as a cross-motion.

           **1.**    *Failure to Protect*

Both parties moved for summary judgment on Plaintiff's failure to protect claims against HCDC, Allen, and Reynolds. Defendants contend that Plaintiff's claims fail on the merits and that the Allen and Reynolds are entitled to qualified immunity. (Defs.' Mot. Summ. J. 10, 12; Defs.' Mot. Alter J. 9).

4

a. **Summary Judgment Standard**

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact which would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must demonstrate that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

b. **Section 1983: Failure to Protect**

"[U]nder the Fourteenth Amendment, pretrial detainees are 'entitled to the same Eighth Amendment rights as other inmates.'" *Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016) (citation omitted). The Eighth Amendment requires prison officials take reasonable measures "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). To establish a claim for failure to protect, a plaintiff must show

5

prison officials acted with deliberate indifference to a substantial risk of serious harm. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

Regarding Plaintiff's claims against Defendants in their official capacities, "[o]fficial-capacity suits . . . 'generally represent . . . another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Thus, Plaintiff's official-capacity claims against Defendants are against their employer, HCDC. A plaintiff must show an alleged constitutional violation in order to establish liability under Section 1983, but a municipality cannot be held liable absent a constitutional violation. *Monell*, 436 U.S. at 694; *Burkey v. Hunter*, 790 F. App'x 40, 41 (6th Cir. 2020).

Defendants further contend they are entitled to qualified immunity in their individual capacities. (Defs.' Mot. Alter J. 9). Qualified immunity involves a two-part inquiry: "[T]aken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right? [Also], is the right clearly established?" *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts may address the two questions in either order). Accordingly, the common question is whether Plaintiff's constitutional rights were violated.

On November 16, 2017, Plaintiff was arrested and lodged as a pretrial detainee in HCDC for failure to comply with sex offender registration. (Defs.' Mot. Summ. J. Ex. 1, DN 20-2). Plaintiff was housed in a segregated unit along with "medical inmates" and other "seg. inmates". (Am. Compl. 4). On February 26, 2018, Plaintiff claims a medical inmate had a "state inmate", Marquise Bates ("Bates"), watching him. (*See* Am. Compl. 4; Compl. 4). Bates allegedly tried to

steal Plaintiff's toilet paper. (Am. Compl. 4). Plaintiff tried to stop Bates and in response Bates allegedly threw him to the ground and severely assaulted him. (*See* Am. Compl. 4).

Under the objective prong of the failure-to-protect claim, "a prison inmate first must show that the failure to protect from risk of harm is objectively 'sufficiently serious.' The inmate must show that 'he is incarcerated under conditions posing a substantial risk of serious harm.'" *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (internal citation omitted) (citation omitted). Defendants deny Plaintiff was in an objectively serious risk of harm because the surveillance footage shows the attack never occurred. (Defs.' Mot. Summ. J. 11). In denying Defendants' initial dispositive motion, the Court indicated its concern that at the time of the ruling Plaintiff only had still photographs of the footage and, further found that because the footage showed Bates enter Plaintiff's cell the evidence "actually seem[ed] to support [Plaintiff's] version of the alleged attack and . . . [did] not conclusively prove that he was not injured as a result of the alleged attack." (Mem. Op. & Order 6-7, DN 32). Plaintiff also claims Reynolds took photos of his torn shirt, his back and face, and the fingernail Bates lost while assaulting Plaintiff. (Pl.'s Statement Facts 2, DN 33; Compl. 4). Plaintiff, however, has not been able to present any of these photographs. (*See* DN 59, DN 81, DN 89). Defendants' evidence shows, however, Plaintiff submitted three sick slips after the attack complaining of lower back pain due to an assault by a "state inmate!" (*See* Defs.' Mot. Summ. J. 2-3, Defs.' Mot. Summ. J. Ex. 4, DN 20-5; Defs.' Mot. Summ. J. Ex. 5, DN 20-6; Defs.' Mot. Summ. J. Ex. 6, DN 20-7). As the Court held before, "the evidence . . . submitted regarding whether Plaintiff was injured in the alleged attack is ambiguous at best." (Mem. Op. & Order 7, DN 32). But even assuming the attack occurred, Defendants have since remedied their previously deficient motion by presenting evidence that Plaintiff cannot show Defendants were deliberately indifferent to the risk of attack.

Under the subjective component of the failure-to-protect claim, a prisoner must show a defendant knew the prisoner faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. "[A] plaintiff must produce evidence showing 'that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Perez v. Oakland Cty.*, 466 F.3d 416, 424 (6th Cir. 2006) (citation omitted). A prisoner can meet this burden by demonstrating that: (1) a prison official was aware of a substantial risk to a particular inmate, even if the official was unaware of who would commit the assault; or (2) a prison official was aware that a particular inmate posed a substantial risk to a large class of inmates, even if the official was unaware of the exact prisoner at risk. *See Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). Subjective knowledge may be "demonstrat[ed] in the usual ways, including inference from circumstantial evidence . . . [or] the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (citation omitted). By contrast, to escape liability, prison officials "might show . . . that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of the danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844.

Defendants show that upon entry to the jail, Plaintiff answered "No" on a questionnaire asking whether he was aware of any reason why he should be separated from another inmate. (Defs.' Mot. Alter J. Ex. 7, DN 37-8). Defendants' records indicate that prior to the attack Bates was not listed on the "Offender Alerts" as an inmate to be kept separate from Plaintiff. (Defs.' Mot. Alter J. Ex. 8, DN 37-9). Likewise, when Plaintiff first requested protective custody on January 18, 2018, he was asked to identify individuals presenting a threat to him and he did not

identify any specific individual. (Defs.' Mot. Alter J. Ex. 9, ¶¶ 3-4, DN 37-10). Plaintiff then requested protective custody again on February 18, 2018, but again there is no evidence that he identified any specific threat to his safety. (Defs. Mot. Alter J. Ex. 4, at 2, DN 37-5). Specifically, Allen and Reynolds state they were not personally aware of any risk to Plaintiff's well-being, and that Plaintiff never notified anyone that Bates, in particular, should not be permitted in or around his cell. (Defs.' Mot. Alter J. Ex. 1, ¶¶ 10-13, DN 37-2; Defs.' Mot. Alter J. Ex. 3, ¶¶ 9-11, DN 37-4). Thus, Plaintiff has not shown that Defendants were aware of a substantial risk of harm to him.

Plaintiff contends that Defendants should have protected him from the harm, but not that they knew it would occur. Plaintiff states "At NO time should any-one been able to assault the plaintiff while he was on Protective Custody!" (Pl.'s Statement Facts 3). Plaintiff contends: "me being on [protective custody] in seg. and getting beaten up is a lack of security and a faul[t] in [Defendants] . . . I was and still am in Protective Custody and it's there [sic] Job to keep me safe from "ANY" HARM AT ALL TIME!" (Am. Compl. 4-5). Plaintiff presents no proof, however, that Defendants knew the attack would occur; rather, Defendants show they did not perceive any risk to his safety. In addition, Plaintiff argues that had Defendants housed the "medical inmate" "upfront" on suicide watch "w[h]ere he belonged[,]" then Bates would never have been able to steal Plaintiff's toilet paper. (Am. Compl. 4). The Court in its previous MOO construed this as an argument that Plaintiff was assaulted by another inmate, despite being in protective custody, because HCDC's policy of failing to separate inmates with different security classifications. (Scheduling Order 1; Memo. Op. & Order 4). Plaintiff similarly makes passing reference that "state inmate . . . Bates was fired from his state med watch job and placed back on the county side of HCDC!" (Compl. 5). This statement is confusing, however, considering Plaintiff's allegation

9

that Bates was on his "med watch job" at the time of the attack. Regardless, Plaintiff presents no evidence that Allen or Reynolds knew of a risk of harm by allowing Bates, a state inmate, to be around Plaintiff, a "seg" inmate. Accordingly, summary judgment will be granted in favor of Defendants.

**B.     Plaintiff's Motion for Summary Judgment/Defendants' Motion to Dismiss**

Because the Court is dismissing Plaintiff's claims, it is unnecessary to address the merits of the parties' remaining motions. Plaintiff's motion will be denied, and Defendants' motion will be denied as moot.

### III.     CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED** as follows:

1.      Defendants' Motion to Alter or Amend (DN 37) is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

2.      Plaintiff's Motion for Summary Judgment (DN 35) is **DENIED**.

3.      Defendants' Motion to Dismiss (DN 96) is **DENIED AS MOOT**.

4.      The Clerks shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

February 23, 2021

cc:     counsel of record
        Plaintiff, *pro se*